AO 91 (Rev. 12/03) Criminal Complaint 8/07

# UNITED STATES DISTRICT COURT

**EASTERN**    DISTRICT OF    **CALIFORNIA**    

OCT 2 5 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA
v.

Joseph John LEONE and
Morris Eugene FRAZIER, II

**CRIMINAL COMPLAINT**

CASE NUMBER:

**2 0 7 - MJ - 0 3 2 9**    KM

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief.  On or about **July 11, 2007** in **Sacramento** County, in the Eastern District of California defendant(s) did,
(Track Statutory Language of Offense)

▸    **Conspire to possess with intent to distribute methamphetamine**

in violation of Title **21**, United States Code, Section(s) **846 and 841(a)(1)**.  I further state that I am a(n) DEA Special Agent and that this complaint is based on the following facts:

▸    **Attached affidavit of Brian Nehring**

Continued on the attached sheet and made a part of this complaint:    **X**

_____
Signature of Complainant  Brian Nehring
Drug Enforcement Administration

Sworn to before me, and signed in my presence

October 24, 2007                                    at  Sacramento, CA
_____        _____
Date                                                              City                    State

KIMBERLY J. MUELLER
United States Magistrate Judge

_____
Name of Judge            Title of Judge            Signature of Judicial Judge

AUSA MARY L. GRAD (916) 554-2763

1   **AFFIDAVIT OF BRIAN NEHRING IN SUPPORT OF COMPLAINT**

2   I, Brian Nehring, being duly sworn state the following:

3   **BACKGROUND AND EXPERTISE**

4   I am a Special Agent of the Drug Enforcement Administration (DEA),
5   San Francisco Field Division, and have been so employed since 1991.  I
6   have had numerous assignments since beginning with DEA, including being
7   assigned to the Clandestine Laboratory Enforcement Team from 1997 to
8   1999, the Oakland Resident Office between 1999 and 2002, and the Mobile
9   Enforcement Team (MET) between 2002 and 2004.  I have been assigned to
10  the Sacramento Division Office since September of 2004.

11  I have received specialized training in narcotic investigation
12  matters including, but not limited to, drug interdiction, drug
13  detection, money laundering techniques and schemes, drug identification,
14  and asset identification and removal, from the Drug Enforcement
15  Administration (DEA).   In addition, I graduated from the DEA Basic
16  Agents Academy at the FBI Academy at Quantico, Virginia.  In total, I
17  have received in excess of 500 hours of comprehensive formalized
18  classroom instruction in those areas outlined above.

19  **OVERVIEW OF FACTS**

20  In approximately April 2007, Edward Cachola (from the Island of
21  Kauai, HI) was being supplied methamphetamine by individuals residing
22  in the Sacramento, CA area.

23  During the period July 10 - 14, 2007, Cachola traveled to
24  Sacramento, for the purpose of acquiring methamphetamine from David
25  Bishop and Donald Fowler.

26  On July 11, 2007, Cachola wanted to see and examine the
27  methamphetamine which Fowler was acquiring for Cachola and would later
28  be sent to him on Kauai.  Fowler purchased two pounds of methamphetamine

1

1  from Joseph LEONE and Morris FRAZIER on this date and brought it to
2  Cachola's hotel room.   After leaving Cachola's hotel on the night of
3  July 11, SPD Officers stopped Fowler's vehicle and effected a warrant
4  less car search and recovered the methamphetamine.

5  **DETAILED STATEMENT OF FACTS**

6      DEA and other Federal law enforcement authorities, and the Kauai
7  Police Department (KPD) have been involved in a long-term investigation
8  which has examined the methamphetamine trafficking activities of a
9  number of persons on the Island of Kauai, State of Hawaii, and
10 elsewhere, including Sacramento, CA.     As part of this ongoing
11 investigation, the United States District Court for the District of
12 Hawaii ("USDC-Hawaii") authorized the interception of wire and
13 electronic communications of three different telephones.  Following are
14 excerpts from intercepted telephone calls:

15     THURSDAY, JULY 5, 2007 AT ABOUT 7:47 AM (Hawaii time): On this date
16 and time, Cachola called the FOWLER cell phone ((916) 838-9636).
17 Cachola started out saying "Don?", and FOWLER replied back, "yeah,
18 Eddie". FOWLER asked "I'm at work, what's up?" Cachola said "the thing
19 is junk, man", further explaining that "the thing is mixed.  More like
20 half was good, half was junk.  So, fuck, I had to wash 'em.  You know
21 what I mean?  Clean 'em.  And I got half back only.  So, I, I, just
22 enough for make my money back.  You know what I mean?  So, I, I going
23 to keep 'em".  FOWLER said, "you gonna keep it?", and Cachola said
24 "yeah, 'cause fuck, I, like I said, I can make my money, what I paid for
25 'em.  Fuck no sense even send 'em back".  FOWLER asked, "so who do you
26 want me, to, uh--", and Cachola said "I rather you just grab the money
27 if can.  I mean, we can go try do something".  FOWLER then asked "you
28 want?  Say it again, Ed", and Cachola said "I, I rather you grab the

2

money.  And we go try do something.  Me and you go do something with
'em".  FOWLER said that "maybe on my lunch, Eddie", and "I'll, I'll ride
out here to David [Bishop] ... so you could talk to him, and let him
know, ah, know that it was ... that it was junk or, or whatever".
FOWLER said that "so that will be, probably be, shit man, that will
probably be about, ah, maybe about 3:00, your time".  Cachola also asked
"what you think?  You can, you can get some, you can get some good da
kine?  Better kine?", and FOWLER said "I mean, I could try.  I mean, I
mean, it don't hurt to try.  Ah, like I said, ah, I'm supposed to get
a sample, ah, today, from my boy, ah, after I get off work".  Fowler
continued: "so, I could, ah, go get the shirt.  And, and you know, the
collared shirt", to which Cachola said "yeah", and Fowler continued,
"yeah, fedex it to you, or ... or I could, um, or I know.  You need
something like ASAP, like right now?", and Cachola said "yeah".  Fowler
added that "I'm gonna call my boy **Joe** [later identified as Joseph John
LEONE] on my break, and let him know I need that sample today".  Cachola
also asked "if he can get two like that or something [that is, two
different samples of methamphetamine].  Two, two different kind", and
Fowler replied "yeah, yeah, I get you", and "yeah, yeah, I can get you
two different kinds".  Fowler later repeated, "half was, half was good
and half was bad.  Wow!"; Cachola later explained: "yeah, but that half
I can make my money back.  And maybe a little bit more.  But, fuck,
it's, I mean, it's better than, than Dave holding my money.  You know
what I mean?"  Fowler indicated that "I'll give you a call about, about
three, three-thirty".

///

///

///

3

**CACHOLA'S TRIP TO SACRAMENTO,**
**JULY 10 - 14, 2007**

According to Hawaiian Air reservation records, Cachola had the following flight reservations:

```
7/10/07 (Tuesday):
     Lihue (Kauai) - Honolulu, Hawaiian #304:
          Depart:    0955
          Arrive:    1024
     Honolulu - Sacramento, Hawaiian #20:
          Depart:    1255
          Arrive:    2055
7/12/07 (Thursday):
     Sacramento - Honolulu, Hawaiian #47:
          Depart:    0955
          Arrive:    1210
     Honolulu - Lihue, Hawaiian #373:
          Depart:    1340
          Arrive:    1417
```

On Tuesday, July 10, 2007, surveilling law enforcement agents observed Cachola take the above-referenced flights from Lihue - Honolulu - Sacramento.  A DEA Agent also traveled on Hawaiian Air flight 20 from Honolulu - Sacramento and was able to keep Cachola under surveillance.  Surveilling officers at the Sacramento International Airport observed Cachola deplane from Gate A5 at about 9:05 p.m. on July 10, 2007.

TUESDAY, JULY 10, 2007 AT ABOUT 6:07 PM (Hawaii time)/**9:07 PM (PST)**: On the date and time, Cachola called the Fowler cell phone ((916) 838-9636) and left the following voice mail message: "Ho, Don, I just landed [unintelligible] now".

Officers thereafter saw Cachola meet with Donald Ray Fowler and another black male (subsequently identified as Lashun Terrell Tucker) in the baggage claim area at the Sacramento International Airport. The three then proceeded to the airport parking garage and they all got into a white-colored Lexus automobile (CA license plate #4TRL819), with Tucker driving.  At about 9:35 p.m., the Lexus parked

4

in the south-side parking garage of Old Sacramento directly across from the Embassy Suites Hotel on Capital Mall in downtown Sacramento. Cachola was subsequently observed checking-in at the Embassy Suites' front desk.  Cachola, Fowler, and Tucker thereafter entered hotel room #219.  At about 9:55 p.m., Fowler and Tucker departed from room #219 and proceeded back to the parked Lexus.  The Lexus then left the parking lot.  At about 10:20 p.m., the Lexus was parked in front of a residence located at 7886 Deer Lake Drive, Sacramento, CA.  At about 10:45 p.m., the Lexus was observed driving away from Deer Lake Drive; Fowler at this time was the only occupant in the Lexus.  Thereafter, at about 10:55 p.m., the Lexus was observed parked in front of the residence located at 5026 Opal Creek Ct, Sacramento, CA (Fowler's residence).

This Lexus automobile (CA license plate #4TRL819) is registered to Darlessia Powe, 5026 Opal Creek Ct, Sacramento, CA, and will hereinafter be referred-to as the "Lexus automobile".

**JULY 11, 2007: FOWLER SHOWS**
**TWO POUNDS OF METHAMPHETAMINE TO CACHOLA; THE SEIZURE**
**OF THESE TWO POUNDS OF METHAMPHETAMINE FROM FOWLER**

WEDNESDAY, JULY 11, 2007 AT ABOUT 8:41 AM (Hawaii time), **11:41 AM (PST)**: On this time and date, Cachola placed an outgoing call the Fowler cell phone ((916) 838-9636)(NOTE: from the Sacramento police surveillance, Fowler would have been at his residence at the time of this call).  In this call, Cachola said "Don", and Fowler replied back "hey, Ed".  After Fowler indicated that his wife had gone on her trip, Fowler asked, "what's up, Ed?", and Cachola said "um, what you think we can, we can, um, we can, you think you can get the stuff today?  No way?"  Fowler indicated "I can try".  Cachola explained that: "I wanted to the, see 'em before I leave.  Ya know what I mean?

5

1  So I know da ting [thing] is coming in" [in other words, besides
2  having the opportunity to examine the methamphetamine samples which
3  Fowler brought over the night before, Cachola also wanted, before he
4  left Sacramento, to see the methamphetamine shipment to be delivered
5  to him in Kauai]. Fowler said "hey, yeah, ex, exactly. Um, and
6  that's, I, that's ironic, Eddie, he just text me, uh, today. Uh,
7  this morning. Just text me and said, uh, ya know, what's up, what's
8  good. So, I'm about to text him now. Actually, he gets off at five,
9  but I believe he has lunch at like twelve, and his job is like five
10 minutes from my house. So, I'm a tell him, to come, to come here.
11 And ah I'll call you and see if, ah if he can get it, if he can get
12 it today. Then we can get it today. And I'll let you check it,
13 before ... um, we send 'em, we send 'em over there. Now, I asked
14 him, um, last night, 'cause I called him after I left and said Eddie
15 liked the, the, the big, the big one, the new samples [that is,
16 Fowler is talking about the methamphetamine samples he had left the
17 prior night with Cachola]. And a ... the guy that he was with, was
18 his, uh, friend. I guess he was with him, and he's the one who had
19 it. He said, man, when he want, does he want it right now? He got
20 it all day. I said, well, tell your boy, man if it's, if it's the
21 same shit, then it's cool. Man, I said I gonna talk to my man
22 tomorrow and we'll try to do something tomorrow. I said, see if he
23 can front the, ah, the, the third one. I said I only have, ya know
24 what I'm saying, the money that Eddie brought, and ... I can, I can,
25 I can get one, Ed. You know what I'm saying, I can get one" ... So,
26 uh, I'm a see if I can still get the third one and see what's, what's
27 going on". Fowler also added: "so, I'm about to text, text my friend
28 back and tell him to come to my house at, on his lunch and then I'll

1 call you with in probably like an hour".  Cachola said "okay, okay,
2 call me then", and also added "thanks, Don".

3      In other words, the money Cachola brought with him to Sacramento
4 would pay for one pound, Fowler was willing to buy another pound with
5 his own money (to sell to Cachola), and Fowler hoped to have a third
6 pound "fronted" (sold on credit) to him.

7      At approximately 12:45 p.m. (PST) on July 11, 2007, police
8 surveillance observed a silver/gray-colored GMC Yukon vehicle (CA
9 license plate #5VEK263), park in front of Fowler's residence (5026
10 Opal Creek Ct., Elk Grove, CA); an adult male got out of this Yukon
11 vehicle and entered Fowler's residence (this adult male was
12 subsequently identified as Joseph John LEONE).

13      DMV checks accomplished on 7/11/07 determined that the
14 registered owner of this silver/gray-colored GMC Yukon vehicle was
15 Joseph John LEONE, 2601 Merlin, Elk Grove, CA; this vehicle will be
16 referred-to herein as "Yukon vehicle".

17      WEDNESDAY, JULY 11, 2007 AT ABOUT 9:50 AM, **12:50 PM (PST)**: On
18 this date and time, Cachola received an incoming call from Fowler's
19 cell phone ((916) 838-9636)(NOTE: from the Sacramento police
20 surveillance, both Fowler and LEONE would have been in Fowler's
21 residence at the time of this call).  In this call, Fowler said "I'm
22 here, I'm here with my, I'm here with my man right now", and "he just
23 came to my house".  Cachola asked "so, what's the plan?"  Fowler
24 said, "he said that, uh, he can get the, he can get two, he said
25 he'll try to work on the third one ... but he said, uh, his boy, his
26 boy is wanting, uh, seventeen [that is, $17,000) for, for, for one.
27 Is that okay?"  Cachola replied, "well, is up to you, you make the
28 call".  Fowler said "yeah, I mean, you said you liked it, I mean-",

7

1  and Cachola replied, "oh, yeah, yeah, fuck yeah".  Fowler then said
2  "okay, he said", and Cachola said "definitely".  Fowler then added
3  that "he gets off work today at five, right?"  Fowler then indicated,
4  "so, I'm a come by your place later to, uh, to talk to you and then
5  ... I say no later than 10:00.  I'll bring both p's [that is, pounds
6  of methamphetamine] to you so you can check 'em out".  Cachola asked
7  "yeah, yeah.  What, you never go check out David's house?  Lately?",
8  and Fowler replied, "no, I been waiting for my friend to get off
9  work.  I told you my friend lives like, ah, he works like five, ten
10 minutes from my house. ...  So, soon as he leaves, I'll, I'll go, I'm
11 a jump in the shower and everything get ready and I'm a go over there
12 and see if he's there or not", to which Cachola said "okay".  Fowler
13 also added: "and I'll call you, but I just, I just didn't want to
14 miss, I just didn't want to miss the dope".  Cachola said, "okay,
15 yeah, yeah, yeah.  Okay.  So, you have to come grab dakine then, eh,
16 before you, you, you get the two, then, eh?", and Fowler said "yeah".
17 Fowler later said "I'll call you in a little bit, I be a ... I'll
18 call you when I'm on my way.  I'll stop by Dave's, but I'll call
19 you".

20      In other words, in the above-referenced telephone call, Fowler
21 advised that he was making arrangements with his methamphetamine
22 supplier (who was then present at his residence) to acquire at least
23 two pounds of methamphetamine for Cachola, with a possibility of
24 getting a third pound.  Consistent with Cachola's prior request,
25 Fowler was planning to show these pounds of methamphetamine to
26 Cachola later this day.  Furthermore, during his prior call with
27 Cachola on July 5 and another one later on July 11 (to be discussed
28 herein), Fowler had identified his methamphetamine supplier as "Joe",

8

1  that is, Joseph John LEONE, who police surveillance had placed at
2  Fowler's house at the time of the above-referenced call.

3      At approximately 1:00 p.m. (PST) on July 11, 2007, police
4  surveillance saw LEONE exit from Fowler's residence (5026 Opal Creek
5  Court), return to the Yukon vehicle, which then drove away.   At
6  approximately 1:10 p.m. (PST), LEONE parked his Yukon vehicle at the
7  Togo's Sandwich Shop at the Laguna Blvd./Franklin Blvd in Elk Grove,
8  CA.   LEONE exited the Yukon vehicle, went into the restaurant and sat
9  down at a table occupied by an adult male subsequently identified as
10 Morris Eugene FRAZIER, II.   LEONE and FRAZIER conversed for several
11 minutes before walking out of the restaurant together.   FRAZIER and
12 LEONE continued speaking for several minutes in the parking lot.
                                         FRAZIER F.N. (W)
13 LEONE then got into his Yukon vehicle, and MORRIS entered a silver-
14 colored Dodge Intrepid with a temporary paper license plate.   Both
15 then drove off together.   At about 1:45 p.m. (PST), both the Yukon
16 vehicle and the Dodge Intrepid entered the parking lot of the Apple
17 Computer Company assembly plant near the intersection of Laguna
18 Boulevard and Interstate 5 in Elk Grove.   LEONE and FRAZIER parked
19 their respective vehicles and then walked together to the building.

20      Officers were thereafter able to see VIN number of the parked
21 Dodge Intrepid on 7/11/07 through the front windshield on the
22 dashboard (VIN#2B3HD56M23H515193).   DMV records indicated that this
23 Dodge Intrepid is registered to Morris E. FRAZIER, 10070 Willard
24 Prkwy, #312, Elk Grove, CA and that its assigned license plate was
25 #5WDX190.

26      In the meantime, Fowler apparently remained at his residence
27 (5026 Opal Creek Court) until about 2:00 p.m. (PST) on July 11, 2007.
28 At that time, Fowler was observed exiting from his residence and

1 driving away in his Lexus vehicle. At approximately 2:20 p.m. (PST),
2 surveillance saw Fowler's Lexus vehicle parked on the street in front
3 of 7637 Lytle Street, Sacramento, CA (a residence is located at this
4 street address); there was no one in the parked Lexis at this time.
5 Shortly thereafter, the Lexus vehicle was seen driving away from the
6 vicinity of this residence.

7     As will be indicated later in this affidavit, Fowler and Lashun
8 Terrell Tucker were later arrested on the night of July 11, 2007 in
9 Fowler's Lexus vehicle. Tucker's residence address was 7637 Lytle
10 Street, Sacramento, CA.

11     At approximately 2:42 p.m. (PST) on July 11, 2007, Fowler's
12 Lexus vehicle entered a parking lot adjacent to the Embassy Suites
13 Hotel in downtown Sacramento where Cachola was staying. Fowler was
14 thereafter seen walking through the Embassy Suites hotel lobby of the
15 hotel, carrying a distinctive blue backpack with an orange bottom
16 slung over his shoulder (hereinafter "subject backpack"). Fowler was
17 then seen going directly to, and entering, hotel room 219 (Cachola's
18 hotel room).

19     Police surveillance had also been present at the Embassy Suites
20 Hotel since the morning of July 11, 2007; Cachola was last seen re-
21 entering his room at about 10:15 a.m. that morning; in other words,
22 Cachola was present in his room when Fowler came that afternoon.

23     At about 3:10 p.m. (PST) on July 11, 2007, Fowler was observed
24 exiting from Cachola's hotel room (#219) in the Embassy Suites.
25 Fowler was carrying the subject backpack as he exited; however,
26 unlike when Fowler had entered the hotel room, the subject backpack
27 now visibly appeared to be filled-out and weighty as he had exited.
28 Fowler got back into his Lexus vehicle and then proceed southbound on

10

1  Interstate Highway 5.

2       As indicated in the prior telephone conversation between Cachola
3  and Fowler on July 9, 2007, Cachola had brought approximately $20,000
4  in cash to purchase methamphetamine.  The likely purpose of Fowler's
5  visit to Cachola's hotel room at this time on July 11 was to pick up
6  the purchase money (as Fowler had indicated in the earlier telephone
7  call on 7/11/07, the price was $17,000 per pound of methamphetamine).

8       At approximately 4:23 p.m. (PST) on July 11, 2007, Fowler's
9  Lexus vehicle was observed parked on the street in front of 4000
10 McNamara Way blocking the residence's driveway (NOTE: this is the
11 residence of David Bishop).  At this time, Fowler could also be seen
12 standing inside the garage speaking to another male who was
13 subsequently identified as David Bishop.

14   In addition, police surveillance was also maintained in the
15 vicinity of the Apple Computer manufacturing facility to which LEONE
16 and FRAZIER had gone.  At approximately 5:02 p.m. (PST) on July 11,
17 2007, LEONE and FRAZIER were seen exiting the facility.  LEONE,
18 operating his Yukon vehicle, and FRAZIER, driving his Dodge 'Intrepid,
19 thereafter left the parking lot.

20      At about 6:50 p.m. (PST) on July 11, 2007, Fowler's Lexus
21 vehicle arrived at 2601 Merlin Way, Elk Grove, CA (that is, LEONE's
22 residence) and parked on the street in front of the residence at this
23 street.  Both Fowler and Tucker were then observed conversing at
24 length in the vehicle.  Several minutes later, after visual
25 surveillance of the parked Lexus vehicle was regained, the vehicle
26 was now unoccupied.

27      WEDNESDAY, JULY 11, 2007 AT ABOUT 4:37 PM (Hawaii time), **7:37 PM**
28 **(PST)**: On this date and time, Cachola called the Fowler cell phone

11

((916) 838-9636)(NOTE: at this time, police surveillance had placed
Fowler at 2601 Merlin Way [LEONE's residence], and Cachola was at
4000 McNamara Way [Bishop's residence]).  In this call, Fowler said
"I'm waiting on the guy right now, I'm at my boy's house, right now",
and "I'm waiting on him to, uh, get here and then, uh, I'll bring it
to you.  You back at the room, or you still over at David's"?
Cachola said "um, yeah, but we going take a ride".  Fowler said, "
oh, you guys did, or", and Cachola replied "we going, we going in
about twenty minutes".  Fowler asked "okay, uh, to meet up with his
cousin?", and Cachola said "um, I think so ... or something else, I
don't know".  Fowler then said "okay, when I'm a, when I'm, when I'm
done here, I'll call you to see where you're at", and Cachola said
"okay".

At about 7:46 p.m. (PST) on July 11, 2007, police surveillance
saw Bishop and Cachola exit from Bishop's residence (4000 McNamara
Way) and get back into the BMW automobile.  Cachola at this time was
carrying a white plastic food-type bag.  Agents followed the BMW
vehicle; however, at approximately 7:50 p.m. (PST), officers lost
sight of the BMW in the vicinity of Highway 99 and Mack Road in
Sacramento.

At about 8:42 p.m. (PST) on July 11, 2007, Fowler and Tucker
were observed exiting from LEONE's residence (2601 Merlin Way) and
re-entering the Lexus vehicle.  Fowler was also  seen placing the
subject backpack in the Lexus' trunk.  With Tucker driving, the Lexus
vehicle departed the area.  At approximately 8:50 p.m. (PST), the
Lexus vehicle returned to Fowler's residence (5026 Opal Creek Court),
where it was parked on the street.  Police surveillance also saw
Fowler remove the subject backpack from the Lexus' trunk; both Fowler

1 | and Tucker then walked to the residence.

2 |     WEDNESDAY, JULY 11, 2007 AT ABOUT 6:11 PM (Hawaii time), **9:11 PM**
3 | **(PST)**: On this date and time, Cachola received an incoming call from
4 | the Fowler cell phone ((916) 838-9636)(NOTE: as indicated by police
5 | surveillance, Fowler was at his residence [5026 Opal Creek Court] at
6 | the time of this call, and Cachola was accompanying Bishop to some
7 | other location).  In this call, Fowler asked "you still with David?",
8 | and Cachola said "yeah".  Fowler said "all right, well, ah, I came
9 | back to my house.  'Cause my friend's wife is coming home at 9:00.
10 | So, dude is supposed to be on his way soon.  So, I was just calling
11 | to give you, give you a little heads up.  I, I'm still gonna bring it
12 | out to you as soon as we get it", to which Cachola said "okay".
13 | Cachola also added "ho ha, so I, probably be at my friend's house,
14 | yeah?", and Fowler said "okay".  Cachola asked "okay, just call me",
15 | and Fowler said "yep".

16 |     At approximately 10:17 p.m. (PST) on July 11, 2007, police
17 | surveillance observed the above-mentioned Yukon vehicle (with LEONE
18 | driving) and the above-referenced Dodge Intrepid vehicle (operated by
19 | FRAZIER) arrive and park on the street in front of Fowler's residence
20 | (5026 Opal Creek Court).  LEONE and FRAZIER then walked together to
21 | the front of Fowler's residence.

22 |     WEDNESDAY, JULY 11, 2007 AT ABOUT 7:23 PM (Hawaii time), **10:23**
23 | **PM (PST)**: On this date and time, Cachola received an incoming call
24 | from the Fowler cell phone ((619) 838-9636)(NOTE: at the time of this
25 | call, Fowler, LEONE, and FRAZIER were present in Fowler's residence).
26 | Before Cachola answered the phone, Fowler could be heard talking to
27 | somebody in the background, saying "when I showed him the second,
28 | the, the samples, he look at 'em and was like, can you get more of

1  this?  I'm like, yeah", at which point Cachola said "hello".  Fowler
2  asked "you, you at your room?", and Cachola said "not yet".  Fowler
3  asked "are you on your way?", and Cachola said "um, yeah, in a little
4  while".  Fowler then explained: "you need to see it, 'cause you know
5  what I'm saying.  If it's not cool, then I need to call **Joe** [that is,
6  LEONE].  He gotta call **Moe** [that is, FRAZIER].  Ya know what I'm
7  saying.  It's, it's at my house right now, I 'm about to get it, so".
8  Cachola said "but, he told me for wait a little while.  He [that is,
9  David Bishop] be there in like couple, fifteen minutes about then",
10 to which Fowler said "that's what he said?", and Cachola responded
11 "yeah".  Fowler then said, "man, I'm telling you, Ed, his fifteen
12 minutes is like an hour or two.  Ya know what I'm saying" (to which
13 Cachola said 'yeah"), and "we gotta, like I want you to see this,
14 like ASAP.  Ya know what I'm saying" (to which Cachola again said
15 "yeah"), and "so, you need, to, you need to tell him to take you to
16 the room.  Like ASAP, Ed.  Like I, I did my part, man.  I did my part
17 of, ya know what I'm saying.  I said I was going to get it for you"
18 (to which Cachola said "yeah").  Fowler further indicated that "I got
19 two right here [that is, two pounds of methamphetamine].  They
20 chunky".  Cachola then said "okay", and Fowler continued, "look just
21 like the, the sample.  So I'm about to cash out [that is, pay for the
22 methamphetamine]", to which Cachola replied "okay".  Fowler said "and
23 I don't want no problems".  Cachola said "I getting tired, too,
24 already.  Gotta [unintelligible] So I gonna let him know that, I'm
25 for bring me back".  Fowler then said "get, get to the room", and
26 Cachola said "yep".

27      At about 10:30 p.m. (PST) on July 11, 2007, Fowler, Tucker,
28 LEONE, and FRAZIER were seen by police officers exiting together from

14

1  Fowler's residence.  Fowler at this time was carrying the subject
2  backpack on his shoulder, which he (Fowler) then placed in the Lexus'
3  trunk.  Fowler then entered the front passenger side of the Lexus,
4  while Tucker enter on the driver's side.  LEONE went to his Yukon
5  vehicle, and FRAZIER went to his Dodge Intrepid.  All three vehicles
6  then drove away from Fowler's residence in tandem, one behind the
7  other.

8       WEDNESDAY, JULY 11, 2007 AT ABOUT 7:30 PM (Hawaii time), **10:30**
9  **PM (PST)**: On this date and time, Cachola received another incoming
10  call from the Fowler cell phone ((916) 838-9636).  Fowler asked "you,
11  you on your way?", and Cachola said "um, in about five minutes".
12  Fowler then asked "in about five minutes.  Okay, well, um, I'll, he,
13  he [that is, David Bishop] just going drop you off, he not going
14  coming to your room, right?", and Cachola said "no, I don't".  Fowler
15  then said, "okay, well, well, when you get there, just be like, 'all
16  right, David, I'll see you tomorrow, brah, I'm going to get into bed
17  or whatever' [that is, Fowler was recommending what Cachola should
18  say to Bishop such that the latter did not come to Cachola's hotel
19  room], and I'm going meet you, I going meet you down there".

20       At about 10:43 p.m. (PST) on July 11, 2007, Fowler's, LEONE's,
21  and FRAZIER's vehicles were all located at a Shell Gas Station
22  located at the intersection of Harbor Point and Laguna Blvd, Elk
23  Grove.  A few minutes later, all three vehicles pulled out of the
24  Shell Gas Station lot in tandem and proceeded together onto
25  Interstate 5 heading northbound towards Sacramento.

26       WEDNESDAY, JULY 11, 2007 AT ABOUT 7:53 PM (Hawaii time), **10:53**
27  **PM (PST)**: At this time and date, Cachola received an incoming call
28  from the Fowler cell phone ((619) 838-9636).  Cachola advised "I stay

15

1  almost to my hotel", and Fowler replied "okay", and Cachola said
2  "okay, I call you when I reach there".

3      At approximately 10:57 p.m. (PST) on July 11, 2007, LEONE's
4  Yukon and Fowler's Lexus took the J Street Exit off of Interstate 5
5  at downtown Sacramento.  FRAZIER's Dodge Intrepid remained on the
6  freeway and continued northbound on Interstate 5.

7      At approximately 11:00 p.m. (PST) on July 11, 2007, Fowler's
8  Lexus and LEONE's Yukon vehicles parked at the south end of the
9  parking lot immediately behind of the Embassy Suites Hotel (where
10 Cachola was staying).  Officers saw LEONE exiting from his YUKON, and
11 Fowler and Tucker getting out of Fowler's Lexus; the three then stood
12 together briefly and appeared to speak to each other.  LEONE and
13 Tucker then got into the Yukon, with LEONE on the driver's side.
14 Fowler subsequently proceeded walking towards the rear entrance of
15 the Embassy Suites Hotel; Fowler also had subject backpack on his
16 shoulder.  As Fowler proceeded towards the Embassy Suites, LEONE
17 essentially circled the parking lot in his vehicle.

18     At approximately 11:10 p.m. (PST) on July 11, 2007, Fowler
19 (still carrying backpack on his shoulders), entered the Embassy
20 Suites Hotel and walked to the door of hotel room 219; the door
21 opened and Fowler went in.  After approximately five minutes, this
22 hotel room's door again opened, and Fowler came out alone, also
23 carrying the subject backpack on his shoulders.  Fowler then exited
24 the rear of the hotel.  At approximately 11:16 p.m. (PST), Fowler was
25 observed standing on the passenger side of LEONE's Yukon (which was
26 now parked near Fowler's Lexus in the parking lot behind the hotel);
27 it appeared that Fowler was talking though the open passenger window
28 to LEONE.  At approximately 11:20 p.m. (PST), Tucker got out of

16

LEONE's Yukon; in addition, Fowler placed the subject backpack in the trunk of his Lexus.  Fowler then entered the passenger side of his Lexus, while Tucker got into the driver's seat.  Both Fowler's Lexus and LEONE's Yukon then drive out of the lot in tandem, with the Yukon in the lead.

At approximately 11:23 p.m. (PST) on July 11, 2007, as LEONE's Yukon entered the Interstate 5 south on-ramp from P Street, and with Fowler's Lexus a short distance behind and heading the same direction, a uniformed Sacramento Police Department officer effected a traffic stop of the Lexus, for the purpose of conducting a probable cause, warrant less car search for illegal drugs.  After being stopped, Fowler advised the officer, among other things, they had just come from the Embassy Suites where they had visited Fowler's friend, Eddie, whom they had picked up from at the airport from Hawaii the previous night. Fowler also advised that the Lexus vehicle belonged to his girlfriend who was a Deputy Probation Officer.  The Officer also noted that Fowler had a cell phone in his possession and that he was appearing to draft a text message; the officer asked him to put the phone down, which Fowler then placed on the dashboard. During the ensuing search of Fowler's Lexus vehicle, the subject backpack was recovered from the trunk.  Upon opening the subject backpack (which was only zippered and not secured with any locks or other locking devices), it was found to contain a white towel wrapped around two clear plastic ziplock baggies, each of which contained approximately one pound of a white crystalline substance (believed to be methamphetamine, and marked as DEA Drug Exhibit 30).  In addition, there was a small amount of suspected methamphetamine contained in a small zippered pouch on the outside of the subject backpack (marked

17

1 as DEA Drug Exhibit 31).  Both Fowler and Tucker were thereafter
2 placed in another police vehicle and transported to the Sacramento
3 County Main Jail downtown to be booked on state drug charges.  Fowler
4 also requested that his cell phone be placed in his property at the
5 jail.

6   Other relevant evidence contained in the subject backpack
7 included a Hawaiian Air boarding pass in the name of passenger Donald
8 Fowler, dated 4/23/07 for flight #514 from Lihue to Honolulu (which
9 was consistent with what Fowler had said during his 6/25/07 telephone
10 call, that Bishop and he had traveled to Kauai at that time and
11 picked up Cachola's money).

12   Additionally, it was also noted that the name "JOE LEONE" was on
13 the top of the electronic display in plain view on the cell phone
14 found in Fowler's possession, which would indicate that Fowler had
15 recently called or been called by this individual.  An officer
16 thereafter used his own cell phone to call (916) 838-9636, and the
17 cell phone found in Fowler's possession thereafter rang (the officer
18 could also hear himself speak through that cell phone); this
19 confirmed that the cell phone found in Fowler's possession was in
20 fact the Fowler cell phone.  Fowler was subsequently released from
21 custody on July 12, 2007; his cell phone was also returned back to
22 him at that time.

23   The substances contained in DEA Drug Exhibits 30 and 31 (from
24 Fowler's subject backpack) were subsequently tested by the DEA
25 Western Region Laboratory and determined to be as follows:
26 ///
27 ///
28 ///

| DEA Ex.#: | Controlled Substance: | Net Weight: | Purity: | Amount of Pure Drug: |
|---|---|---|---|---|
| 30 | Methamphetamine Hydrochloride | 887.1 gm | 48.0% | 425.80 gm |
| 31 | d-Methamphetamine Hydrochloride | 0.78 gm | 98.3% | 0.76 gm |

Based upon the foregoing, I believe that there is probably cause to believe that Joseph John LEONE and Morris Eugene FRAZIER, II are in violation of 21 U.S.C. §§ 846 and 841(a0(1)


DATED: Sacramento, California, October 24, 2007,

_____
Brian Nehring, DEA Special Agent

Subscribed and Sworn to
Before Me, this 24th 25th
Day of October 2007.

_____
KIMBERLY J. MUELLER
United States Magistrate Judge

1